# Application of 18 U.S.C. § 205 to Communications Between the National Association of Assistant United States Attorneys and the Department of Justice

The restrictions of 18 U.S.C. § 205 preclude current federal employees from representing the National Association of Assistant United States Attorneys before the Department of Justice regarding compensation, workplace issues, and other issues that focus on the interests of Assistant United States Attorneys or another discrete and identifiable class of persons or entities

Section 205 does not preclude several other kinds of communications between the Department and NAAUSA or similar associations. The Department is not precluded from dealing with individual AUSAs or groups of AUSAs in their official capacities on matters affecting AUSAs, even if those AUSAs are coincidentally members of NAAUSA  Nor does section 205 place any restrictions on representatives who are not current federal employees, such as NAAUSA's executive director or former AUSAs no longer employed by the government  Finally, discussions of broad policy directed towards a large and diverse group of persons would be permissible under the statute.

November 7, 1994

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

You have asked for our opinion as to whether and how the provisions of 18 U.S.C. § 205 apply to communications between employee members of the National Association of Assistant United States Attorneys ("NAAUSA") and officials of the Department. After consulting with the Office of Government Ethics ("OGE"), whose views on this question were provided to us in an advisory opinion dated September 28, we have concluded that while discussions of broad policy options are not "covered matters" within the meaning of the statute, several of the issues NAAUSA may wish to present constitute "covered matters" under § 205. Accordingly, that section's prohibition on representational activities would bar a federal employee from representing NAAUSA's position on those matters before department officials.

Section 205 is not a barrier to other types of communications between the Department and NAAUSA or similar associations. The Department is in no way precluded from dealing with individual or groups of Assistant United States Attorneys ("AUSAs") in their official capacities on matters affecting AUSAs, even if those AUSAs are coincidentally members of NAAUSA. Nor does § 205 place any restrictions on representatives who are not current federal employees, such as NAAUSA's executive director or any former AUSAs no longer employed by the government. Finally, discussions of broad policy directed towards a large and diverse group of persons would be permissible under the statute.

## I. *Background*

NAAUSA characterizes itself as a professional, non-governmental association with the primary objective of promoting and protecting the career and professional interests of AUSAs. It is incorporated as a non-profit corporation in the District of Columbia, and is organized to operate as a business league or trade association within the meaning of § 501(c)(6) of the Internal Revenue Code. NAAUSA Articles of Incorporation. NAAUSA's membership, currently numbering almost 1,000, is open to all current and former AUSAs, including supervisors and managers. The founders of NAAUSA patterned the organization after the Federal Bureau of Investigation Agents Association, founded in 1981, and also compare their activities to those of national, state, and local bar associations. According to its promotional materials, NAAUSA's immediate priorities include soliciting the views of its members on legal and law enforcement issues and presenting those views to the Department, Congress and the public; seeking greater AUSA compensation from the Department and from Congress, including a retirement plan comparable to those enjoyed by other law enforcement personnel, bonuses and cash awards; and working with the Department on workplace issues, such as parental leave and child care. Membership solicitation letter from Lawrence J. Leiser, President, NAAUSA (Jan. 1994); *see also* Newsletter of the NAAUSA, vol. 1, issue 1 (June 1994).

The executive director of NAAUSA, who is not a federal employee, and its president, an AUSA, have requested meetings with the Attorney General, the Attorney General's Advisory Committee ("AGAC"), the Executive Office of U.S. Attorneys ("EOUSA"), and other department officials to discuss their concerns on behalf of NAAUSA and its members. You have asked us to identify any restrictions § 205 would place on NAAUSA's communications with department officials.

## II. *Section 205: Overview*

Section 205 subjects any "officer or employee of the United States in the executive, legislative, or judicial branch of the Government or in any agency of the United States" who, "other than in the proper discharge of his official duties . . . acts as agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest" to penalties including imprisonment for up to one year and a civil fine of not more than $50,000. 18 U.S.C. §§ 205(a), 216. For the purposes of § 205, the term "covered matter" is defined as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." *Id.* § 205(h).

213

There are several classes of representations which are not restricted in any way by § 205. Representations before Congress, which is not a department, agency, or court, are not covered by § 205.[1] In addition, since § 205's prohibitions apply only to officers and employees of the United States, any non-federal employee representative of NAAUSA, such as its current executive director or a former AUSA no longer employed by the government, may represent NAAUSA before the Department without violating the statute.[2]

Where a federal employee wishes to represent NAAUSA before the Department, the OGE has stated, and we concur, that

> [a]s a general proposition, it seems clear that § 205 would bar an employee from representing an employee organization before the Government unless the representation was part of the employee's official duties, or otherwise met one of the exceptions in the statute, or was undertaken in accordance with a statute that explicitly exempted the activity from the proscription of § 205. There is no indication that Congress intended to generally exempt employees from the prohibition of § 205 when representing employee interest groups.

OGE Opinion at 2 (footnote omitted).

## A. *Official Duties*

By its terms, § 205 does not apply to activity undertaken pursuant to an employee's official duties. For this reason, the activities of employees such as the U.S. Attorney members of the AGAC are not restricted by § 205. The members of the AGAC, at the direction of the Attorney General, participate in a process estab-

---

[1] We address in a separate opinion certain First Amendment and related issues pertaining to testimony by an AUSA on legislation in which the Department has an interest, where the AUSA is not authorized to speak on behalf of the Department but rather is appearing in a personal capacity on behalf of NAAUSA

[2] Section 205 does not apply to representations made by an employee on his own behalf, or to purely factual communications As the OGE has explained,

> Because § 205 does not prohibit self-representation, an employee may represent his own views before the Government in connection with a particular matter even if those views are the same as those held by an organization in which the employee happens to be a member. . [A]n examination of all of the circumstances surrounding the communication might[, however,] indicate that the employee was in fact representing the organization to the Government on the matter. For example, if the employee's views were submitted in writing on the organization's stationery, or if the employee identified himself as an officer or member of the organization in stating his views, the Government might properly conclude that the employee was really acting as the organization's representative

Letter for the Honorable Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Stephen D Potts, Director, Office of Government Ethics at 2-3 (Sept 28, 1994) ("OGE Opinion") Finally, OGE also noted that the prohibitions of § 205 are not applicable to "[c]ommunications of a purely ministerial nature," such as "responding to requests from the Government for factual information " *Id* at 3

lished and directed by department officials to accomplish the Department's mission. *See* 28 C.F.R. § 0.10 (1994). AGAC members are clearly acting pursuant to their official duties, and their representation of other employees or of the Committee does not violate the statute.

NAAUSA cannot be characterized as an internal management committee akin to the AGAC. As a corporation, NAAUSA has a legal identity independent of that of the Department or its members. Department officials played no role in its creation, and exercise no control over its officers or its activities. NAAUSA's membership includes individuals who are no longer employees of the federal government. While NAAUSA's agenda focuses on issues arising from its members' status and responsibilities as AUSAs or former AUSAs, an employee's decision to participate in or represent NAAUSA is not an obligation of his employment, and, concomitantly, not an official duty.

## B. *The Exceptions to Section 205*

NAAUSA's proposed activities do not fall within the scope of the limited exceptions to § 205's prohibitions. The exception for representation in "personnel administration proceedings" is somewhat related to NAAUSA's objectives. It provides that "[n]othing in subsection (a) or (b) prevents an officer or employee . . . from acting [with or] without compensation as agent or attorney for, or otherwise representing . . . any person who is the subject of disciplinary, loyalty, or other personnel administration proceedings in connection with those proceedings." 18 U.S.C. § 205(d)(1). When advising on the appropriateness of instituting criminal charges, we have declined to give the term "personnel administration proceedings" an "overly narrow reading," instead suggesting that it should be read as applying to the general class of "personnel matters." Memorandum for the Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: AUSA's Representation of Removable Justice Department Official* at 5-6 (Aug. 31, 1982) ("Olson Memorandum"). The personnel proceedings exception, however, is limited to the representation of individual employees, and cannot be read as permitting employees to represent associations or corporations in personnel matters. OGE has rejected extending the exception for self-representation to representations of employee associations "because it appears that the same theory would necessarily apply in cases where an employee represents the interest of any organization of which he is a member." OGE Opinion at 4. Our conclusion that the personnel administration exception does not apply to the representation of an employee association such as NAAUSA is consistent with this reasoning.

The legislative history of § 205 indicates that Congress included this exception to allow "government employees, who are subject to disciplinary or other personnel action . . . to obtain a government lawyer to ensure the effective representation

of their rights without having to incur the expense of hiring private counsel." *See* Olson Memorandum at 2 (internal quotation marks omitted). The advisory opinions of the Office of Government Ethics construing this exception involve the representation of individual employees in matters affecting them individually. *See, e.g.*, O.G.E. Informal Adv. Op. 85 x 1, (Jan. 7, 1985) *in Informal Advisory Letters and Memoranda and Formal Opinions 1979-1988*, at 511 (1990) ("*OGE Informal Opinions*") (noting application of this exception to appearances before Military Discharge Review Boards and the Boards for the Correction of Military Records on behalf of an individual employee). There is no indication in either the legislative history of § 205 or in those advisory opinions that Congress intended, in addition to facilitating assistance for individual employees facing personnel action, to authorize the representation of employee associations in such matters.[3]

While there are no decisions considering the application of the personnel administration exception to representation of an association or corporation, this Office has addressed the question of whether the implied exception for self-representation under § 205 allows an employee to represent a corporation in which he is the sole shareholder. In that opinion, we advised an agency that § 205 would prohibit an employee from acting as agent or attorney on behalf of such a corporation. *Conflict of Interest-Litigation Involving a Corporation Owned by Government Attorney*, 1 Op. O.L.C. 7 (1977). Analyzing the same issue, OGE has advised that

> [t]he implied exception in section 205 for self-representation does not extend to the representation of a distinct legal entity such as a corporation (e.g., through an appearance by its President). Moreover, there is nothing in the legislative history on section 205 that would indicate that a corporation wholly owned by natural persons enumerated in 18 U.S.C. § 205 should also be regarded as being covered by the self-representation exception.

O.G.E. Informal Adv. Op. 84 x 14 (Oct. 31, 1984) *in OGE Informal Opinions* at 493, 494 (referring to the list of immediate family members the exception codified in subsection (e) permits an employee to represent in certain circumstances).

## C. *Statutory Exemptions: Labor Relations Statutes*

Section 7102 of title 5 gives "employee" members of "labor organization[s]" the right "to form, join, or assist any labor organization. . . . [S]uch right [i]ncludes

---

[3] Congress's consideration and enunciation of the principles governing collective employee activity are found in the Federal Labor Relations statutes, not in the conflict of interest laws As we explain *infra*, with the exception of representation on behalf of a certified labor organization, the labor statutes do not evince any intent to exempt associational representation from the ethics provisions of title 18.

the right . . . to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government." 5 U.S.C. § 7102. After consulting with the Justice Management Division, we have concluded that § 7102 does not itself create any right to represent a labor organization or to "bargain" with an agency. Bargaining rights are available only to labor organizations that satisfy the requirements for certification in §§ 7111-7114. Under the labor management relations statutes, "bargaining" is not limited to negotiations for a binding collective agreement. A "discussion" between an agency and a labor organization of compensation or parental leave, for example, would probably be considered "bargaining" for these purposes. Since NAAUSA is not certified to bargain under the relevant provisions, § 7102 confers no representational rights on its employee members. The Justice Management Division agrees with this conclusion.

### III. *The Scope of "Covered Matter" and NAAUSA's Objectives*

Since an employee's representation of NAAUSA would not be an aspect of his official duties, would not fall under one of the exceptions to § 205, and would not be undertaken pursuant to any statute exempting his actions from § 205, the prohibitions of the statute would apply. Section 205 penalizes any federal employee who "acts as agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest." 18 U.S.C. § 205(a)(2). A "covered matter" is defined for purposes of the statute as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, *or other particular matter." Id.* § 205(h) (emphasis added).

### A. *Covered Matter: A Definition*

Section 205 was enacted as part of the comprehensive reform of the government ethics laws in 1962. Act of Oct. 23, 1962, Pub. L. No. 87-849, 76 Stat. 1119, 1122 ("the Act"). In interpreting the term "covered matter" in § 205, it is therefore appropriate to consider the language and structure of the other ethics provisions contained in the same section of the Act. The portions of the Act codified at 18 U.S.C. §§ 203, 207-208 all restrict employees' conduct in connection with "particular matters" or a list of matters essentially identical to that in § 205(h). [4]

---

[4] As originally enacted, § 205 prohibited any employee of the United States from acting as an agent or attorney before any agency or department "in connection with any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular

We find the Office of Government Ethics' regulations and the opinions of this Office construing § 208 especially helpful in interpreting the term "covered matter" in § 205. Section 208 prohibits any executive branch officer or employee from participating "personally and substantially" in any "judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter" in which he has a "financial interest." 18 U.S.C. § 208(a). Like § 205, § 208 is designed to prevent a government employee from misusing his official position to advance the interest of a non-governmental entity. In addition, the list describing the official actions covered by § 208 contains all but one of the terms listed as "covered matters" in § 205. *Compare* § 208(a) (the term "investigation" is not among the listed matters) to § 205(h).

The Office of Government Ethics has issued regulations defining the term "particular matter" for the purposes of § 208. In those regulations, "particular matter" is defined as

> encompass[ing] only matters that involve deliberation, decision, or action that is *focused upon the interests of specific persons, or a discrete and identifiable class of persons.* Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interests of such a discrete and identifiable class of persons. The term particular matter, however, *does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons.*

5 C.F.R. § 2635.402(b)(3) (1994) (emphasis added).

---

matter " 76 Stat at 1122. The term "covered matter" was introduced in the 1989 amendments to the statute, which also divided § 205 into lettered subsections Ethics Reform Act of 1989, Pub L No. 101-194, § 404, 103 Stat. 1716, 1750. The language sanctioning a federal employee who acts as an agent or attorney was placed in subsection (a), and modified to prohibit acting as an agent or attorney "in connection with any covered matter." The list of terms beginning with "proceeding, application, request for a ruling" was moved to the definition of "covered matter" in subsection (h) *Id.*

Section 203 prohibits federal employees from seeking or accepting compensation for any representational service "in relation to any proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest or other particular matter in which the United States is a party or has a direct and substantial interest " 18 U.S.C § 203(a)(1).

Section 207(a) restricts former employees of the executive branch from appearing before or communicating to federal employees "in connection with a particular matter" in which the former employee "participated personally and substantially " A "particular matter" is defined as including "any investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding." *Id* § 207(i)(3).

OGE has applied the same standard in construing the terms in § 205. In their advisory opinion, OGE noted that

> there may be situations where a member of an employee organiza-
> tion wishes to represent the organization to the Government on a
> matter which is not a "particular matter" within the meaning of
> § 205. In such a case, the representation would be made *in connec-
> tion with a broad policy matter that is directed to the interests of a
> large and diverse group of persons rather than one that is focused
> on the interests of a discrete and identifiable class.*

OGE Opinion at 4 (emphasis added).

With the OGE advice and regulations as guidance, we look also to our own opinions examining the scope of the term "particular matter" as used in § 208. In an unpublished 1990 opinion, this Office addressed that question in some detail. Memorandum for C. Boyden Gray, Counsel to the President, from J. Michael Luttig, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Applica-bility of 18 U.S.C. § 208 to General Policy Deliberations, Decisions and Actions* (Aug. 8, 1990) ("Gray Memorandum"). That analysis was driven by the principle of *ejusdem generis*, the canon which directs that "'a general statutory term should be understood in light of the specific terms that surround it.'" *Id.* at 3 (quoting *Hughey v. United States*, 495 U.S. 411, 419 (1990)). To determine the scope of the term "particular matter" in § 208, it was therefore necessary to ascertain the common characteristics of the more specific matters enumerated in the list of cov-ered matters in § 208(a): a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter. Each of these specific terms, we con-cluded, involves a determination of the interests of "specific individuals or entities, or a discrete and identifiable class of individuals or entities." *Id.* at 5. "'The pur-pose of this [particular matter] language throughout the federal conflict of interest laws is to limit application of the laws to actions focusing upon particular, distinct, and identifiable sets of facts with reasonably measurable implications and conse-quences.'" *Id.* at 5 n.8 (quoting R. Jordan, *Ethical Issues Arising From Present or Past Government Service, in Professional Responsibility* 171, 177 (1978)).

To illustrate these principles, that opinion observed:

> [The] decision to pursue an administrative enforcement action
> against a specific company or group of companies is sufficiently fo-
> cused upon the interests of a specific entity or a discrete and identi-
> fiable group of entities as to be comparable in particularity to an
> "investigation," a "judicial proceeding," or a "contract" negotiation.
> . . . In contrast, deliberations on the general merits of an omnibus

219

> bill, such as the Tax Reform Act of 1986, are too diffuse in their fo-
> cus to be analogous to an "application," "request for a ruling," or a
> "claim . . . ." In sum, whether or not the object of deliberation, de-
> cision, or action constitutes a "particular matter" will depend upon
> how closely analogous the object of deliberation, decision, or action
> is to the object of a typical "judicial proceeding," "claim,"
> "application," or other matter enumerated in section 208.

*Id.* at 6. We also noted that "governmental action such as legislation or policy-making that is *narrowly focused upon the interests of a specific industry or a specific profession* is concerned with a 'discrete and identifiable class' and may implicate section 208." *Id.* at 7 (emphasis added).

Applying these principles, we consider whether representations on behalf of NAAUSA would constitute "covered matters" under § 205.

### B. *Are NAAUSA's Objectives Particular Matters?*

None of the correspondence we have seen between NAAUSA and the EOUSA identifies specific topics for discussion between NAAUSA and department officials. We are of the opinion that many of the issues listed as "immediate objectives" in NAAUSA's promotional materials, including those focusing upon the terms and conditions of employment for AUSAs, would qualify as "covered matters" under § 205.

AUSAs are a "discrete and identifiable class" by virtue of their employing agency, their profession, and their position. *See* Gray Memorandum at 7 (governmental action such as legislation or policymaking that is narrowly focused upon the interests of a specific industry or a specific profession is concerned with a "discrete and identifiable class"). Whether particular legislation or policy determinations constitute "covered matters" will depend upon how closely the matter focuses upon the interests of AUSAs and upon whether the determination can be expected to have a direct and predictable effect on those interests. The inquiry is necessarily fact specific and not susceptible to bright line rules.

With that caveat, we are able to draw some general conclusions. The compensation and workplace issues NAAUSA has identified as priorities for action will generally be covered matters under § 205. Any determination or legislation that addressed topics such as raising the AUSA salary cap, improving AUSA retirement benefits, reinstating immunity for federal prosecutors, or allowing unscheduled overtime bonuses for AUSAs would be focused exclusively on the interests of the class of AUSAs.

It is not as clear that discussions of general policy, such as the Crime Bill, would inevitably be particular matters. It would be necessary to analyze the factual context using the principles outlined above. For example, the question of the ap-

propriate emphasis that the Department should place on prevention programs may not sufficiently focus on the interests of AUSAs to be deemed a particular matter, while addressing a provision that would increase the number of prosecutors probably would.

It may thus be possible for department officials to meet with employee representatives of NAAUSA to discuss certain broad policy issues. All parties should be aware of the limitations § 205 imposes on the discussion before such a meeting, and the agenda should be reviewed to ensure that the discussion does not reach "covered matters."

## IV. *The Covington Memorandum*

Upon learning that this Office would be drafting an opinion analyzing the application of § 205 to communications with NAAUSA representatives, NAAUSA's counsel submitted a memorandum for our consideration explaining why in their view the restrictions of § 205 do not apply. *See* Memorandum for Carol DiBattiste, Director, Executive Office for U.S. Attorneys, from Sean F. Foley, Counsel to NAAUSA, Covington & Burling (Sept. 13, 1994) ("Covington Memorandum"). This section addresses the reasoning of that memorandum.

NAAUSA's counsel makes three broad arguments that § 205 should not apply to activities undertaken on behalf of NAAUSA. First, since the interests of the officers and members of NAAUSA are the interests of AUSAs *qua* AUSAs (or former AUSAs), the interests served by contacts between NAAUSA and department officials do not involve the outside, private interests that Congress sought to restrict in § 205. Covington Memorandum at 6. Second, it is argued that the contacts by NAAUSA involve "generalized legal and policy issues and do not pertain to the day-to-day departmental proceedings covered by § 205." *Id.* at 7; *see also* discussion *infra* at p. 4. Finally, Covington argues that interpreting § 205 to restrict contacts between members of a professional association and employing agencies would be inconsistent with the practice of the Federal Government as evidenced by association participation in the National Performance Review, the activities of the member associations of the Public Employees Roundtable, and the absence of any discussion of § 205 in the chapters of the rescinded Federal Personnel Manual which encouraged agencies to cultivate a working relationship with professional associations. *Id.* at 8-9.

## A. *"Outside Interests" and the Policy Underlying § 205*

We agree with NAAUSA's counsel that the purpose of § 205 is to prohibit a Federal employee from representing outside, private interests. We do not agree with his contention that NAAUSA should not be considered an "outside" interest. As a non-profit corporation with an independent legal identity, NAAUSA is a pri-

vate entity with interests that are distinct from those of the Department and its members. NAAUSA has an institutional interest in raising funds, attracting new members, increasing its visibility to the public, and building a reputation as a credible, influential body. Gaining access to government decisionmakers serves these institutional interests, which cannot be characterized as internal to the Department. Nor are these institutional interests necessarily identical to its members' interests as present or former department employees.

The structure of § 205 contradicts the contention that Congress did not intend for the prohibition of § 205(a) to cover contacts related to employment matters. If this were the case, there would have been no need to include the exception for representation of employees in "personnel administration proceedings" in § 205(d). Moreover, as explained in section II.B, this exception cannot be fairly extended to cover representing a corporation or association, even one entirely composed of covered employees.

## B. *NAAUSA's Objectives are not Covered Matters*

The Covington Memorandum does not address the "particular matter" language in § 208 and the accompanying regulations. Counsel for NAAUSA relies instead on the language of § 207, portions of which forbid conduct related to "particular matters" while others apply to "any matter on which such person seeks official action." *Id.* at 5 (comparing 18 U.S.C. § 207(i)(3) to § 207(c)&(d)). Given the use of both terms in § 207, that memorandum argues that Congress could not have meant for the term "particular matter" to include "every matter in which a Federal employee might become involved in a representational capacity" in § 207, nor by analogy in §§ 205 or 203. *Id.*

We agree with the conclusion that matters such as the formulation of broad policy are not necessarily "particular matters" under § 205. As OGE stated in their opinion, "[i]n such a case, the representation would be made in connection with a broad policy matter that is directed to the interests of a large and diverse group of persons rather than one that is focused on the interests of a discrete and identifiable class." OGE Opinion at 4. A definition of "particular matter" which is limited to actions affecting a "discrete and identifiable class" is narrower in scope than the language "any matter on which such person seeks official action" in § 207, and is consistent with previous constructions of "particular matter" under § 208 and its regulations.

The Covington Memorandum does not specify the "legal and policy positions affecting AUSAs" that NAAUSA is interested in communicating. Determinations regarding the compensation, pensions, or working conditions of AUSAs, which have been identified as NAAUSA objectives in NAAUSA publications, would constitute covered matters under this definition. Any agent representing NAAUSA

in the discussion of such matters should therefore not be a current federal employee.

## C. *Inconsistency with Federal Government Practice*

The Covington Memorandum argues that interpreting § 205 as restricting contacts between agency officials and professional associations would be inconsistent with the practice of several federal agencies and groups, including the participation of associations in the National Performance Review, the activities of the Public Employees Roundtable associations, and the guidelines provided by former chapters 251 & 252 of the Federal Personnel Manual. We are not familiar with the procedures of the National Performance Review or of other federal agencies with respect to communications with professional organizations. Compliance with § 205 would not necessarily preclude achieving the objectives of the National Performance Review. An employee's participation in a working group or management committee structured along the lines of the Attorney General's Advisory Committee could be undertaken pursuant to his official duties. Section 205 would not restrict that employee from representing the views of his colleagues or of his office in that forum.

We have reviewed the former chapter 252 of the Federal Personnel Manual, which did indeed note that "an agency may consult with any association or organization on matters related to its mission and programs" and that "the relationship between the agency and the association or organization may be very close and mutually beneficial" without any mention of § 205 and its restrictions on communications. Federal Personnel Manual, ch. 252 at 3-4 (Jan. 16, 1990). These statements are consistent with our conclusion that such an organization may make its views known to the Department or meet with Department officials through the organization's staff or members who are not government employees. However, it is a sufficient response to the argument in the Covington Memorandum to state that the Department and its employees cannot avoid complying with a criminal statute simply because it is not mentioned in the Federal Personnel Manual.

## CONCLUSION

We agree with the Office of Government Ethics that there is no general exception for employment related matters or employee associations from the restrictions of § 205. A deliberation, decision, or action focused upon the interests of AUSAs or another discrete and identifiable class would be a "covered matter," and accordingly, communications between a current federal employee acting as a representative of NAAUSA and the Department on those matters would violate the statute.

Section 205 is not an impediment to several other kinds of communications between the Department and NAAUSA or similar associations. The Department is in no way precluded from dealing with individual or groups of AUSAs in their official capacities on matters affecting AUSAs, even if those AUSAs are coincidentally members of NAAUSA. Nor does § 205 place any restrictions on representatives who are not current federal employees, such as NAAUSA's executive director or any former AUSAs no longer employed by the government. Finally, discussions of broad policy directed towards a large and diverse group of persons would be permissible under the statute.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*